OTTO B. JACOBSON, *d. b. a.* OTTO'S AUTO SERVICE, v.
AETNA CASUALTY & SURETY COMPANY, AUTOMOBILE
INSURANCE COMPANY, OF HARTFORD, CONNECTICUT.[1]

March 16, 1951.

No. 35,383.

[1]Reported in 46 N. W. (2d) 868.

*Johanson, Winter & Lundquist,* for appellant.
*Carl J. Eastvold,* for respondent.

MATSON, JUSTICE.

Defendant appeals from a judgment awarded plaintiff for loss caused by theft of an automobile.

We are concerned with the sole question of *what constitutes a voluntary parting or surrender of possession* within the meaning of the *exclusionary* clause of an insurance policy issued by defendant to plaintiff to protect him from damage or loss caused by the theft, larceny, robbery, or pilferage of an automobile. The exclusionary clause is as follows:

"(d) Under the Theft, Larceny, Robbery or Pilferage Coverage (if such Policy covers these perils)—loss suffered by the Insured in case *he voluntarily parts with title to or possession of* any automobile at risk hereunder, whether or not induced so to do by any fraudulent scheme, trick, device or false pretense, or otherwise;" (Italics supplied.)

The facts have been stipulated and are not in dispute. Late on Saturday afternoon on August 13, 1949, plaintiff, who operates a sales garage in Ortonville, was approached by a motorist who falsely represented himself to be W. R. Brereton of Madison, Wisconsin, and who, because he was allegedly in a hurry to continue his journey, wished to trade in his disabled 1936 Oldsmobile for a later model of the same make. A tentative deal was made whereby plaintiff agreed to accept the disabled car plus $375 in payment of a 1939 Oldsmobile which plaintiff owned. Since plaintiff wanted to examine the disabled car more carefully and since it was then almost 5 p. m. Saturday evening, plaintiff refused to complete the transaction until the next Monday morning. A check for $375, showing W. R. Brereton as the maker, was given plaintiff, but neither party gave a bill of sale or transfer of title for either automobile. The prospective buyer requested the use of plaintiff's 1939 Oldsmobile until the deal was closed so as to try it out and drive it over the week end. Plaintiff consented and voluntarily delivered the 1939 Oldsmobile to the prospective purchaser, who thereafter had physical control of the vehicle over the week end, subject to the understanding that it would be returned the following Monday morning for completion of the deal.

On Monday morning, the person representing himself as W. R. Brereton failed to appear at, or return the 1939 Oldsmobile to, plaintiff's place of business. Upon investigation, plaintiff discovered that the 1936 Oldsmobile had been stolen from W. R. Brereton and that the check for $375 was worthless. The 1939 Oldsmobile, reasonably worth $500, was never returned to plaintiff.

The trial court found that at the time the 1939 Oldsmobile was stolen the plaintiff had not parted with the title or possession of the automobile within the terms of the insurance policy and ordered judgment for plaintiff for $500, together with costs and disbursements. Defendant, whose motion for a new trial

was denied, appeals from the judgment. It is admitted that plaintiff never parted with the title and that his delivery or surrender of the physical control of the car was induced by fraud. We are concerned therefore solely with the question of whether plaintiff, as defendant contends, voluntarily parted with the possession of the automobile within the meaning of the policy's exclusionary clause. Plaintiff asserts that the person representing himself as W. R. Brereton never came into *possession* of the automobile within the strict meaning of that term, but only acquired *custody* of the automobile, and that plaintiff at all times retained *constructive possession*. Obviously, the controlling issue narrows itself down to the question of what meaning is to be ascribed to the word *possession* as used in the exclusionary clause of the insurance policy.

Although cases from other jurisdictions support the views of both defendant and plaintiff,[2] this court has not heretofore had occasion to define the word *possession* as used herein.

The word *possession* has many shades of meaning and, as applied to a variety of facts, is not capable of one exact definition. In National Safe Deposit Co. v. Stead, 232 U. S. 58, 67, 34 S. Ct. 209, 212, 58 L. ed. 504, 509, Mr. Justice Lamar said:

"* * * there is no word more ambiguous in its meaning than Possession. It is interchangeably used to describe actual possession and constructive possession which often so shade into one another that it is difficult to say where one ends and the other begins."

Ambiguity in the meaning of the word *possession* dates from the introduction into the law of the concept of *constructive possession*. Disputes as to the meaning of possession stem either from an inadvertent disregard of the origin and scope of the construc-

<hr>

[2]Boyd v. Travelers F. Ins. Co. 147 Neb. 237, 22 N. W. (2d) 700 (supports defendant's view); Tripp v. United States F. Ins. Co. 141 Kan. 897, 44 P. (2d) 236 (supports plaintiff's view); for other cases, see 109 A. L. R. 1080.

tive-possession concept or from a placing of the word *possession* in a context which creates or leaves a doubt as to whether *actual*—namely, possession in its ordinary or original sense—or *constructive* possession is meant. It would seem that an understanding of the inception of the term *constructive possession* would eliminate any ambiguity in the meaning of *possession* as used in the instant case. At common law, the idea developed that for larceny there must be a trespass, *a taking from the possession of another without his consent.*[3] A modification of this idea emerged from the problem of whether a servant had custody or possession of goods delivered to him by his master where the goods were to remain in the master's house or personal presence.[4] To solve this problem, a statute[5] was enacted which provided that when chattels were delivered to a servant by his master and the servant converted them, it should be a felony. This statute was strictly construed by the courts so that when a master delivered money to a servant to carry off the premises and the servant converted it, he was not guilty of committing a felony.[6] Thereafter, in Rex v. Lavender [1793] 2 East, Pleas of the Crown, 566, the court finally remedied the situation by introducing a new concept: Because of the status of master and servant, the master had *constructive possession* even where the last vestige of *actual* possession or physical control by the master has been eliminated; as a result, a servant who was to leave the premises with money delivered to him by his master and who converted the money was guilty of larceny, *since he only had custody and not possession.* The courts resorted to the fiction of *constructive possession* to

[3] "* * * larceny may be defined to be the fraudulent taking and carrying away of a thing without claim of right, with the intention of converting it to a use other than that of the owner, without his consent." 2 Wharton, Criminal Law (12 ed.) § 1097. See, 3 Holdsworth, History of English Law (3 ed.) p. 361.

[4] 1 Hale, Pleas of the Crown, 505(f).

[5] 21 Hen. 8, c. 7 [1529]; also in 1 Hale, Pleas of the Crown, 666.

[6] Watson's Case [1778] 2 East, Pleas of the Crown, 562.

388

expand the definition of possession in a servant-and-master relationship, thereby preventing injustice.[7]

 In the light of its origin and subsequent development, *constructive possession* of personal property by its owner exists where the owner has *intentionally* given the *actual* possession—namely, the direct physical control—of the property to another for the purpose of having him do some act *for the owner* to or with the property; that is to say, constructive possession exists wholly in contemplation of law without possession in fact. If the controlling reason or primary purpose for which the surrender of possession is made belongs to the owner, he retains constructive possession. Where the owner retains constructive possession, the party to whom bare physical control of the property has been entrusted for the owner's purpose does not have possession but only custody. Illustrative thereof are cases where a hotel guest delivers physical control of his automobile to a hotel attendant for overnight storage in the hotel's garage[8] or where the owner places his automobile in the custody of a garage for storage or for repair.[9]

In the instant case, the facts preclude the existence or retention of constructive possession by the owner, in that he delivered physical control of the automobile to the prospective buyer for the immediate and direct purpose of enabling the latter, for his own use and benefit, to try out, use, and drive the car over the week end. We are here concerned, therefore, not with the ambiguity-producing legal concept of constructive possession, but with possession in its basic and ordinarily accepted meaning, namely, *physical control of the property for one's own use.* In

[7]M. S. A. 622.01 consolidates as one crime those offenses involving the wrongful appropriation of another's property which were designated at common law as larceny, embezzlement, and false pretenses.

[8]Bennett Chevrolet Co. v. Bankers & Shippers Ins. Co. 58 R. I. 16, 190 A. 863, 109 A. L. R. 1077.

[9]Gibson v. St. Paul F. & M. Ins. Co. 117 W. Va. 156, 184 S. E. 562 (storage).

Webster's New International Dictionary (2 ed.) (1947) possession in law is defined as follows:

"Act, fact, or condition of a person's having such control of property that he may legally enjoy it to the exclusion of all others having no better right than himself. What constitutes such possession depends upon the subject matter and the legal system involved; but, in general, all legal systems recognize as having possession him (as a thief) *who has actual physical control of a thing and holds it for himself, \* \* \*."* (Italics supplied.)

■ Unless we are to assume that the words of the exclusionary clause were used without an intent to express any meaning— and this we are not permitted to do in the absence of conflicting clauses which cannot be reconciled in the light of the policy as a whole—it is difficult to understand how they can be given any meaning other than that of an intent to exclude from coverage a voluntary parting of *actual* possession. Where language limiting the obligation of the insurer is ambiguous and susceptible of more than one meaning, the rule requiring a liberal construction in favor of the insured is one of selectivity of meaning and not one of obliteration of all meaning. See, Cement, Sand & Gravel Co. v. Agricultural Ins. Co. 225 Minn. 211, 30 N. W. (2d) 341. If the words of exclusion were not intended to embrace actual possession, there would be no other possession with which the owner could voluntarily part, and the exclusionary words would be meaningless. Aside from the ambiguity that would arise if we were concerned with facts disclosing a retention of constructive possession by the insured (which would then normally be construed in favor of the insured), it is difficult to perceive, with respect to the present facts, how the exclusionary language can be given any other meaning than that of embracing a voluntary surrender of *actual* possession.

■ It follows that if the owner voluntarily surrenders physical control of his automobile to a third party with the intent that the recipient third party shall exercise exclusive dominion

or control of the vehicle, temporarily or otherwise, solely or primarily for such third party's direct use or purpose,—as distinguished from a use or purpose for the direct benefit of the owner,—then the insured has voluntarily surrendered possession within the meaning of the exclusionary clause of the policy; and there is no insurance coverage. It is immaterial that the owner, in voluntarily surrendering physical control, may have been motivated by a desire for the indirect benefit of making a sale if such surrender was coupled with the intention of giving the recipient thereof the exclusive right to exercise such physical control for the recipient's own personal use or advantage, such as a use to enable the recipient to determine if the vehicle is a desirable one to purchase. To whom, as intended by the owner, does the direct and immediate purpose or use for which the surrendered physical control is to be exercised belong? That is the basic question. In other words, a voluntary surrender of possession, within the meaning of the policy's exclusionary clause, is effected only when the surrender of physical control is accompanied by an intent that the control so surrendered, though it be of only temporary duration, shall be exclusively vested in the recipient and shall by him be exercised, at his pleasure, for the immediate and direct accomplishment of a purpose or use belonging to such recipient. See, Boyd v. Travelers F. Ins. Co. 147 Neb. 237, 22 N. W. (2d) 700; Annotation, 109 A. L. R. 1080.

The judgment of the trial court is reversed.

Reversed.