## Midtown Auto Sales, Inc. v. Motorists Mutual Insurance Co.

*Ken Tompkins*, for plaintiff.
*Robert Ceisler*, for defendant.

TOOTHMAN, *J.*, July 15, 1983—Plaintiff, Midtown Auto Sales, Inc. filed a suit in assumpsit against its insurance carrier, Motorists Mutual Insurance, for the sum of $1,650 with interest from February 11, 1980, for the loss by theft of a 1976 Subaru, 2 door sedan, white, Vehicle I.D. no. A22L94347. Defendant answered that plaintiff's insurance coverage is not applicable, since the car was taken "by trick, scheme or false pretense." A board of arbitrators heard the matter, finding defendant liable for the loss and entered an award accordingly. Defendant filed an appeal, and following a pre-trial conference, the attorneys entered a stipulation of the facts, and placed the issue before the court, as one of law.

At the time of the incident, defendant had a commercial package insurance policy on the cars involved in plaintiff's business. That coverage was provided in two separate portions of the policy, one

part, Section U410 provided coverage for specified, scheduled automobiles, the other part, Section A131 provided less extensive coverage generally on a value and location basis without specific automobiles being scheduled. On February 13, 1980, plaintiff was deprived of a 1976 Subaru automobile, valued at $1,550. The only testimony available is that of Glen C. McCracken, who in his deposition stated that early one morning, at the sales lot, he being the only one there, a young man was on the lot looking at their stock of cars. He said he was looking for a used car to buy and was shown the car in question. It was driven from one lot to the other, and as they sat there talking, the salesman told him they could take it for a test drive. He got a plate and put it on, then got a phone call, and finally told the man that he could take it for a drive and "check it out." At 9:15 am when the salesman noticed he hadn't returned he told another employee about it, and at 9:40 am called the state police to report a stolen car. The car was never located. It is acknowledged that Section U410 of the policy is not applicable, since it was not a scheduled car, and if coverage existed it must arise from Section A131. That section of the policy under the heading of "Exclusions" provides: "(f) under Comprehensive Coverage and Fire, Theft, and Supplement at Coverage to loss resulting from: (i) someone causing the named insured to voluntarily part with the covered automobile by trick, scheme or false pretense: or . . ."

The legal argument arises from the meaning and interpretation of that exclusionary clause, plaintiff arguing that it did not "part with" the vehicle "by trick, scheme or false pretense." Defendant contends that it did, and that similar exclusionary clauses have been upheld as valid and applicable in

other states, although never decided in this jurisdiction, citing Phillips Motor Co. v. U.S. Guaranty Co., 285 S.W. 2d 333 (Ark. Sup. Ct. 1955); Freedom v. Queen Insurance Co. of America, 15 Cal. Rptr., 364 P. 2d 245 (1961); Hanover Fire Ins. Co. of N.Y. v. Scroggs, 92 Ga. App. 548, 83 S.E. 2d 703 (1955); Jacobson v. Aetna Casualty and Surety Co., 233 Minn. 383, 46 N.W. 2d 868 (1951), et. al. Defendant's counsel further explains that while none of these cases involve the same wording as in the exclusionary clause in the instant case, the language is of like import, and in the Phillips case, supra, and in Tripp v. U.S. Fire Ins. Co., 141 Kan. 897, 44 P. 2d 236 (1935), the Arkansas and Kansas Supreme Courts drew a distinction between "possession" and "custody," and held that relinquishing control does not necessarily mean relinquishing possession.

This being a case of first impression in this jurisdiction, however, we must examine the subject anew. In Pennsylvania, it has been held that when interpreting the meaning of contract language, words are to be given their plain and ordinary meanings. Pa. Manufacturers Assoc. Inc. Co. v. Aetna Cas. and Surety Co., 426 Pa. 433, 233 A. 2d 548 (1967); Monti v. Rockwood Ins. Co., 303 Pa. Super. 473, 450 A. 2d 24 (1982). As to this, Webster's International Dictionary defines trick as "to deceive by cunning or artifice," and scheme as "a crafty or unethical project" and false pretense as "false representations concerning past or present fact or events for the purpose of defrauding another," and part with meaning "to give up, relinquish or let go." Analyzing the events of that early morning at the car lot, with these definitions in mind, we find that a potential car buyer came to defendant's lot, stating that he was interested in

buying a second car. This being the business of the agency, that is a routine, frequent occurrence. The only aspect different in this particular situation is that the salesman permitted the customer to test drive the car alone, which is, undoubtedly, not the usual custom of the business. However, in doing so, presuming the normally good intentions of the buyer, unless the salesman could have read his mind, there is nothing to suggest that he, the salesman, intended to part with the ownership or control of the car. The right or privilege of test driving the car, is, at best, only a temporary, momentary parting with the custody of the vehicle, and that for a limited, specific purpose, with the implied understanding that it will be returned shortly, promptly and intact. If there was a devious different "scheme," "trick," or plan in the mind of the customer, the salesman had no possible way of knowing about it. Certainly nothing in their discussion indicated it. And in the definition of "part with" meaning to give up, relinquish or let go, such a circumstance implies more permanency in the surrender of custody than the bare permission to take the car for a test drive, wherein the title, ownership and control of the vehicle remains still with the defendant. It thus follows that the exclusionary clause of the policy is not applicable.

## ORDER

And now, July 15, 1983, the court finds in favor of plaintiff and against defendant in the amount of $1,550 plus costs and interest from February 11, 1980.