**In re The Marriage of Ginger C. KOECHER, Petitioner, Appellant,**

v.

**Walter W. KOECHER, Respondent.**

No. C5–85–529.

Court of Appeals of Minnesota.

Sept. 24, 1985.
Review Denied Nov. 26, 1985.

Daniel Dewan, North Branch, for appellant.

P. Hunter Anderson, Cambridge, for respondent.

Heard, considered and decided by POPOVICH, C.J., and FOLEY, and LESLIE, JJ.

## OPINION

LESLIE, Judge.

Appellant, Ginger Koecher, moved to modify and interpret portions of a divorce decree. The trial court denied her motion. We affirm in part and reverse in part.

## FACTS

Appellant, Ginger Koecher, and respondent, Walter Koecher, were married on August 3, 1964. They had two children—Mark, born in 1966, and Keith, born in 1969. In 1983 they decided to obtain a divorce.

The parties originally discussed the matter with Bruce Johnson, an attorney. There is some controversy over what type of relationship the parties had with Mr. Johnson. Mrs. Koecher alleges that Johnson jointly represented them. Mr. Koecher and Johnson claim that Johnson represent-

ed Mr. Koecher, but agreed to handle the entire matter if no controversy arose, and if a controversy arose he would represent Mr. Koecher individually. A controversy did arise, and Mrs. Koecher consulted another attorney who commenced the action on October 20, 1983. Shortly after this, the Koechers came to an agreement on the property distribution. Mrs. Koecher dismissed her attorney, and Johnson proceeded as the only attorney.

Johnson then drew up a stipulation. The relevant provisions of the stipulation provided that Mr. Koecher would receive the family's business property, known as Stacy TV., with the provision that if the business were sold, Mrs. Koecher would receive forty percent of the proceeds from the sale. Mrs. Koecher would receive two autos, her clothing, jewelry, personal effects, and "any other item of personal property in her possession at the date of the stipulation, as agreed upon between the parties, subject to any encumbrances thereon." Mr. Koecher would receive various items of personal property, and "any other item of personal property on the homestead premises not in the physical possession of the Petitioner." A final hearing was held on December 5, 1983, and findings and judgment and decree were filed based upon this stipulation.

On November 6, 1984, Mrs. Koecher moved to modify provisions of the decree relating to the payment of her share of the business property and to interpret and enforce provisions relating to the division of a coin collection owned by the parties. Mrs. Koecher argued that at the time the parties entered into the stipulation, Mr. Koecher intended to sell the business and move out of the state. She argued that an earlier version of the stipulation had stated that she would receive the proceeds of the sale before her youngest child reached age eighteen. She alleges that this provision was deleted from the final stipulation because of Mr. Koecher's representations that he would soon be selling the business and moving. She moved the court to modify the final decree to provide for a lien on the business in an amount equal to forty per-

cent of the net sale proceeds. Mr. Koecher denied these allegations.

Another controversy arose over the disposition of a coin collection. The Koechers owned a collection of gold and silver coins allegedly worth several thousand dollars. Mrs. Koecher alleges that the parties had originally agreed to split the value of this coin collection equally, but that the coins would be kept with Mr. Koecher in a safe in their house. Mrs. Koecher apparently took approximately 150 coins, but Mr. Koecher kept the rest of them. Mrs. Koecher moved the court to award her her share of the coins.

The district court denied Mrs. Koecher's motion. As to Mrs. Koecher's claims to the business property, the court noted the following dialogue between appellant and the family court judge in the transcript from the dissolution proceedings:

THE COURT: A couple of questions. First of all, you understand that this proposed Decree then would say that if your husband sold the business or the property in Stacy, then you would receive forty percent of the net proceeds, but if he never sells it, that, for example, if ultimately it were inherited by the children or if rather than selling it were foreclosed upon or some other way he no longer had it, then you would not get anything out of it?

THE WITNESS: (The Petitioner) We made that up. He was intending on selling it, but now I don't know what his intentions are.

THE COURT: But I am just saying the way it's written it says if he sells it, if he disposes of it by means other than sale, then you would not receive anything out of it; do you understand that?

THE WITNESS: (The Petitioner) I understand it.

The trial court believed the motion to modify the award of real property could be granted only if there was fraud or mistake. The court believed the transcript showed that no fraud existed because Mrs. Koecher had been informed of all material facts and the legal consequences of those facts at the

time of the final hearing. Therefore, the court denied appellant's motion relating to the business.

The court also denied appellant's motion regarding the coins. The court noted that respondent did not deny that the parties had agreed to split the coins nor that he had possession of more coins than had been agreed to. However, the court stated that it felt compelled to enforce the plain language of the decree which said that respondent would receive "any other item of personal property on the homestead premises not in the physical possession of the Petitioner." The court felt that since appellant did not allege respondent had fraudulently induced her to agree to the provision in the agreement, the parol evidence rule barred any evidence of a prior agreement which contradicted the judgment and decree. Because Mr. Koecher was in physical possession of the coins, the court held that he was entitled to the coins.

## ISSUES

1. Did the trial court err in refusing to modify the dissolution decree to impose a lien in favor of appellant on business property awarded to respondent?

2. Did the trial court err in failing to interpret and enforce the personal property clauses of the decree in light of an oral agreement of the parties?

## THE BUSINESS PROPERTY

Appellant requests this court to modify the judgment and decree to provide for a lien and to impose conditions upon which it is to be paid. She renews her contention that the parties originally agreed that respondent would sell the business before their youngest child turned eighteen. She contends that she relied on respondent's representations and similar representations by the attorney. She now contends that these representations were fraudulently made.

Appellant argues that in dissolution cases courts find fraud more easily than in other cases. Appellant points to a line of cases beginning with *Hafner v. Hafner*, 237 Minn. 424, 54 N.W.2d 854 (1952), where the court has allowed modification of property settlements because one party to the divorce failed to disclose information to the other. As the court stated, "[i]t is a general rule that in transactions between husband and wife, there is a confidential relationship, that at all times good faith must be observed, and that taking advantage of any lack of knowledge of rights is ground for setting aside the transaction." *Hafner*, 237 Minn. at 432, 54 N.W.2d at 859. Appellant also points to *Ronnkvist v. Ronnkvist*, 331 N.W.2d 764, 765–66 (Minn.1983), where the court stated, "[t]he general rule is that parties to a marital dissolution proceeding have a duty to make a full and accurate disclosure of all assets and liabilities to facilitate the trial court's property distribution * * *. A breach of that duty constitutes fraud sufficient to set aside the judgement." Appellant argues that respondent's failure to disclose his intention not to sell the business immediately was a breach of his duty to fully disclose, and therefore is fraud sufficient to set aside the judgment.

■ Appellant's argument must fail because the record contains ample evidence to support the court's finding on this matter. While appellant claims that she was not informed of respondent's intent not to sell the business, her statements to the court clearly imply that she did realize respondent might not sell the property.

■ Appellant also argues that she should be granted relief because respondent's attorney misrepresented the true nature of his relationship with respondent. This argument suffers from the same defect as her previous argument. While appellant makes these allegations, the stipulation which appellant signed clearly states as follows:

That Bruce N. Johnson, who drafted the within stipulation was retained by Respondent and represents his interests. Petitioner initially retained an attorney but is now proceeding without an attorney. She expressly waives the right to

counsel and has freely and voluntarily signed the stipulation herein.

Because this court is unwilling to hold that appellant did not really mean what she said in court or what she signed her name to in the stipulation, appellant's first claim must be dismissed.

### The Coins

Appellant's motion concerning the coins is not to modify the judgment but merely to interpret and enforce it. Therefore, the ownership of the coins depends on interpreting clauses eight and nine of the judgment. Clause eight awards appellant "personal property in her possession at the date of the execution of this Stipulation, as agreed upon between the parties * * *." Clause nine awards respondent "any other items of personal property on the homestead premises not in the physical possession of the Petitioner." The trial court, focusing exclusively on clause nine, held that because the coins were in the homestead and not in the physical possession of appellant they belong to respondent. We disagree with the trial court's interpretation of the clause.

The trial court apparently felt that *all* personal property in the house belonged to respondent. However, a closer examination of the judgment shows that is not the case. Clause eight grants appellant personal property in her possession as agreed upon by the parties. Clause nine then grants respondent *any other* property in the homestead and not in appellant's physical possession. Clause nine clearly does not grant all property in the house to respondent, but only that property not already given to appellant in clause eight. Therefore, in order to determine if the property belongs to respondent because it is in the homestead, we must first determine whether it passed to appellant pursuant to clause eight.

■ Appellant argues that clause eight is ambiguous. Appellant first argues that the word "possession" is inherently ambiguous. Appellant cites *Jacobson v. Aetna Casualty & Surety Co.*, 233 Minn. 383, 386, 46 N.W.2d 868 (1951), where the court discussed in detail the term "possession." The court noted that possession could mean actual possession or constructive possession. Actual possession is "possession in its ordinary or original sense." *Jacobson*, 233 Minn. at 387, 46 N.W.2d at 871. Constructive possession, on the other hand, "exists where the owner has *intentionally* given the *actual* possession—namely, the direct physical control—of the property to another for the purpose of having him do some act *for the owner* to or with the property." 233 Minn. at 389, 46 N.W.2d at 871.

■ Appellant points especially to the provision of clause eight which grants appellant the property in her possession "as agreed upon by the parties." Appellant argues that this phrase makes the clause even more uncertain and ambiguous, as it implies that the parties intended to mean constructive possession rather than actual possession. Words should generally be given their ordinary and popular meaning. *Turner v. Alpha Phi Sorority House*, 276 N.W.2d 63, 67 (Minn.1979). While the general meaning of possession is actual possession, the phrase "as agreed upon by the parties" makes it uncertain whether this was the meaning the parties intended to use. Therefore we agree with appellant that the clause is ambiguous.

■ Because the clause is ambiguous, the trial court should have received parol evidence in order to interpret the clause as the parties intended. *See Stieler v. Stieler*, 244 Minn. 312, 319, 70 N.W.2d 127, 131 (1955). After determining that clause nine controlled the disposition of the coins, the court failed to receive parol evidence. Because we hold that clause eight is dispositive, we reverse and remand with instructions that the trial court take evidence to interpret that clause as the parties intended, and determine if the parties actually entered into the agreement as appellant alleges. If they did enter into such an agreement, the court should then determine the value of the coins taken by appel-

lant and the value of the entire collection, and then grant appropriate relief.

### DECISION

The trial court was correct in refusing to modify the judgment, but erroneously interpreted parts of it. We affirm in part and reverse and remand in part.