# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 06-6068NE

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Western Iowa Limestone, Inc., | * | |
| | * | |
| Debtor. | * | |
| | * | |
| United Bank of Iowa, | * | |
| | * | Appeal from the United States |
| Appellant, | * | Bankruptcy Court for the |
| | * | District of Nebraska |
| v. | * | |
| | * | |
| Independent Inputs, et al., | * | |
| | * | |
| Appellees | * | |

_____

Submitted: February 9, 2007
Filed: March 19, 2007

_____

Before KRESSEL, Chief Judge, SCHERMER and VENTERS, Bankruptcy Judges.

_____

VENTERS, Bankruptcy Judge.

This appeal involves a contest between a secured creditor and three would-be buyers in the ordinary course of business over the proceeds from the sale of several tons of agricultural lime. The bankruptcy court first awarded the proceeds to the

secured creditor, but then reversed course and awarded the proceeds to the buyers. For the reasons set forth below, we reverse the decision of the bankruptcy court.[1]

## I. STANDARD OF REVIEW

We review findings of fact for clear error and conclusions of law *de novo*.[2] The central issue on appeal – whether the Appellees qualify as "buyers in the ordinary course of business" under Iowa law – is a mixed question of law and fact, which is also subject to *de novo* review.[3]

## II. BACKGROUND

The facts pertinent to this appeal are uncontested.[4]

In 2004, the Debtor, Western Iowa Limestone, Inc., began marketing agricultural lime ("lime"). The plan for marketing the lime entailed enlisting six fertilizer and chemical dealers, including the Appellees, Independent Inputs, L.L.C., Paul Leinen, and Leinen, Inc. (collectively, "Dealers"), to remarket and sell the lime.

In January 2005, Independent Inputs, L.L.C., ("Independent") purchased 5,000 tons of processed lime from the Debtor at a price of $7.75 per ton. At the time of

---

[1] We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(b).

[2] *Kelly v. Jeter* (*In re Jeter*), 257 B.R. 907, 909 (B.A.P. 8th Cir. 2001).

[3] *In re Stephens*, 276 B.R. 610, 613 (B.A.P. 8th Cir. 2002) ("Mixed questions of law and fact are subject to plenary review."). *See also*, *Loehrer v. McDonnell Douglas Corp.*, 98 F.3d 1056, 1061 (8th Cir. 1996).

[4] The Appellant has challenged the bankruptcy court's finding that the transactions at issue were customary in the Debtor's industry, but we do not need to reach that issue because we reverse the bankruptcy court's order on other grounds.

purchase, Independent paid for all of the lime and received a bill of sale memorializing the transaction. The bill of sale noted that the lime could remain on the Debtor's premises. At the time the Debtor filed bankruptcy, Independent had removed only 416.54 tons of the lime it had purchased.

In February 2005, Mr. Leinen and Leinen, Inc., each purchased 6,700 tons of lime from the Debtor at a price of $7.46 per ton. Mr. Leinen and Leinen, Inc., also paid for the lime in full and received a bill of sale noting that the lime could remain at the quarry. At the time the Debtor filed bankruptcy, the Leinen entities had only removed 1,405.95 tons of the lime they had purchased.

The lime purchased by the Dealers was never segregated from the stockpiles of lime on the Debtor's premises or otherwise identified as having been sold to anyone (let alone to the Dealers). The bankruptcy court did find, however, that there was always sufficient lime available on the Debtor's premises to fulfill the Dealers' contracts.

At the time of these sales and after, the Debtor's business operations were financed, at least in part, by United Bank of Iowa ("United Bank"), which was owed approximately $6 million. That debt was secured by all of the debtor's assets, including inventory, accounts receivable, and proceeds. The lime was a part of the Debtor's inventory.

The Debtor filed a petition for relief under chapter 11 of the Bankruptcy Code on December 12, 2005. On January 3, 2006, the Debtor filed a motion to sell substantially all of its assets free and clear of liens, with the liens to attach to the proceeds. The bankruptcy court granted the Debtor's motion but, in recognition of the Dealers' claims of ownership of the lime, preserved the Dealers' rights to make claims against the proceeds of the sale. The Dealers did, indeed, file a joint objection ("Objection") to the proposed distribution of the sales proceeds, claiming a priority

3

over United Bank to the extent of the value of the lime that they had purchased but which remained in the Debtor's possession. The Dealers argued (as they do in this appeal) that their interest in the proceeds from the sale of that lime is superior to United Bank's because they qualify as "buyers in the ordinary course of business" ("BIOC") who purchased the lime free and clear of United Bank's security interest under Iowa law. Independent seeks to be reimbursed $35,521.82 for the remaining 4,583.46 tons on its contract, and the Leinen entities seek to be reimbursed $89,507.88 for the remaining 11,994.05 tons on their contract. The parties submitted the matter to the bankruptcy court on affidavit evidence and briefs.

On May 24, 2006, the bankruptcy court entered an order ("Order #1") overruling the Dealers' Objection. The bankruptcy court determined that the Dealers did not qualify as BIOCs because, under its interpretation of Iowa law: 1) a BIOC must have physical possession of the goods, 2) the goods to the contract must have been "identified" and the seller must have been insolvent at the time of the purchase, or 3) the Dealers must have been entitled to specific performance of the contract. After sorting through conflicting "testimony" which was offered by affidavit, the bankruptcy court determined that 1) the Dealers never took physical possession of the lime, 2) the goods purchased (the lime) had been "identified" to the contract as that term is used in article 2 of the Uniform Commercial Code ("UCC"), but that the Dealers had failed to prove that the Debtor became insolvent within ten days after the Dealers paid for the lime, and 3) that the Dealers were not entitled to specific performance because replacement, or "cover," goods were available. Therefore, the court held that United Bank was entitled to the proceeds received from the sale of the lime.

The Dealers filed a motion to alter or amend the judgment or for new trial under Fed. R. Civ. P. 59 on June 2, 2006. The Dealers' sole argument in the motion was that the bankruptcy court committed legal error when it concluded that a purchaser must have actual physical possession of goods to qualify as a BIOC; rather, the Dealers

4

argued, the possession requirement for BIOC status is satisfied by "constructive possession," which they contend they had by virtue of the fact that the lime had been "identified" to the contract at the time of sale. The Bank objected to the Dealers' motion on procedural grounds, arguing that the Dealers' "constructive possession" argument was a new legal theory which could not be raised on a Rule 59 motion; on legal grounds, disputing the applicability of the concept of "constructive possession" to a determination of BIOC status; and on factual grounds, contending that the Dealers did not have constructive possession of the lime, even if constructive possession satisfies the possession requirement for BIOC status.

The bankruptcy court held a hearing on the Dealers' motion on July 5, 2006, at which no new evidence was presented. On September 26, 2006, the bankruptcy court issued an order ("Order #2") holding that its original legal conclusion that BIOC status required actual physical possession of the goods was, indeed, erroneous. The court concluded that a party qualifies as a BIOC if it has "constructive possession" of the goods and that the Dealers had constructive possession of the lime because it had been "identified" to the contract as that term is used in article 2 of the UCC. Consequently, the bankruptcy court entered judgment in favor of the Dealers and awarded them the proceeds in question according to their respective interests. The Bank timely appealed the bankruptcy court's order granting the Dealers' motion to amend judgment.

## III. DISCUSSION

We first address United Bank's contention that the bankruptcy court should not have addressed, and ultimately ruled on the basis of, the Dealers' "constructive possession" argument because it was a new legal theory inappropriately raised in the Dealers' Rule 59 motion to amend judgment. On this point, we find that the bankruptcy court did not abuse its discretion in considering the Dealers' "constructive possession" argument (although in the final analysis we conclude that the Dealers did not have constructive possession of the lime).

5

A bankruptcy court has broad discretion in determining whether to deny a motion to alter or amend judgment pursuant to Rule 59,[5] and the determination of which arguments are properly before the court is implied in that grant of discretion. That determination cannot be reversed absent a clear abuse of discretion.[6] A bankruptcy court abuses its discretion when it bases its decision on a legal error or a clearly erroneous finding of fact.[7]

In this case, while it is true that the Dealers did not advance the "constructive possession" argument in any pleadings related to the Objection, the bankruptcy court reviewed the transcript of the April 17, 2006 hearing on the Objection and found that the Dealers did, in fact, "mention" constructive possession at the hearing (found on page 19 of the transcript) and that that was sufficient to preserve the issue for purposes of a subsequent Rule 59 motion. That finding is not clearly erroneous.

United Bank contends that the Dealers' passing reference to constructive possession was insufficient to preserve that issue because the Dealers were not actually arguing that constructive possession satisfies the BIOC test when it "mentioned" it at the hearing. But that argument is splitting hairs (which we will not do under a clearly erroneous standard), and, moreover, ignores the overall context of the Dealers' argument that they could take "possession" of the lime without taking physical possession of it and that the "constructive delivery" or "constructive

---

[5]*United States v. Metropolitan St. Louis Sewer District*, 440 F.3d 930, 933 (8th Cir. 2006).

[6] *Id.*

[7] *Kennedy Bldg. Associates v. CBS Corp.*, 2007 WL 284381 (8th Cir. 2007).

6

possession" – the Dealers used both terms – of the lime was not inimical or fatal to their contention that they are entitled to the protections afforded a BIOC.[8]

We turn next to the central issues of whether actual or constructive possession is required for BIOC status (the relevance of which is explained below) and whether the Dealers had constructive possession of the lime. Because we find that the Dealers did not have constructive possession of the lime, we do not need to rule on whether actual or constructive possession is required for BIOC status under Iowa law. Nevertheless, it is important to begin the analysis with an examination of the context in which constructive possession is claimed to apply.

Generally, a security agreement is effective against purchasers of collateral and the security interest arising therefrom "continues in collateral notwithstanding sale, lease, license, exchange, or other disposition thereof unless the secured party authorized the disposition free of the security interest. . . ."[9] There are exceptions to this general rule, however. A secured party may consent to the release of its security interest – which consent has not been given here – or one of the provisions in UCC article 9 under which a party takes free and clear of the security interest may apply.

The exception at issue in this case is found in Iowa Code § 554.9320, which provides that "a buyer in ordinary course of business takes free of a security interest created by the buyer's seller, even if the security interest is perfected and the buyer knows of its existence." Official Comment 3 to § 554.9320 references UCC § 1-201

---

[8] The term "constructive delivery" is substantively equivalent to the term "constructive possession"; only the perspective differs. Expanding our consideration to the Dealers' use of both terms reinforces our conclusion that the bankruptcy court did not abuse its discretion on this issue.

[9] Iowa Code § 554.9315. *See also*, Iowa Code § 554.9201(1).

(Iowa Code § 554.1201) for the definition of "buyer in ordinary course of business," which provides in pertinent part:

> "Buyer in ordinary course of business" means a person that buys goods in good faith, without knowledge that the sale violates the rights of another person in the goods, and in the ordinary course from a person . . . in the business of selling goods of that kind. A person buys goods in the ordinary course if the sale to the person comports with the usual or customary practices in the kind of business in which the seller is engaged or with the seller's own usual or customary practices. . . . Only a buyer that takes <u>possession</u> of the goods or has a right to recover the goods from the seller under article 2 may be a buyer in ordinary course of business.[10]

A buyer has a right to recover goods under article 2 if: 1) the goods to the contract have been "identified" – which in the case of fungible goods requires only that the contract refer to an undivided share in an existing, specified fungible bulk – and the seller becomes insolvent within ten days of the sale;[11] or 2) the buyer has a right of specific performance.[12]

As noted above, Order #1 held that the Dealers did not qualify for BIOC status because they did not have physical possession of the lime and because they did not have a right to recover the lime from the Debtor under article 2 (of the UCC as adopted in Iowa). The bankruptcy court found that the Dealers did not have a right to recover the lime because: 1) although the goods were identified for purposes of

---

[10] Iowa Code § 554.1201(9) (emphasis added).

[11] *See* Iowa Code §§ 554.2502, 554.2501(1), and§ 554.2501, cmt. 5 (stating requirements for identification of fungible goods).

[12] *See* Iowa Code §§ 554.2502 and 554.2716.

8

§ 554.2501, the Dealers failed to establish that the Debtor became insolvent within ten days of the sales; and 2) that the Dealers did not have a right to specific performance because "cover" goods were available.

The bankruptcy court reversed Order #1 upon the Dealers' motion to amend judgment on the solitary basis that it had failed to consider, and ultimately adopt, the Dealers' argument that the Dealers obtained "constructive possession" of the lime at the time of purchase, and that constructive possession satisfies the requirement in § 554.1201 that a buyer take "possession" of the goods purchased to qualify as a BIOC. The bankruptcy court cited several cases,[13] including the Iowa Supreme Court case, *First Nat'l Bank in Lenox v. Lamoni Livestock*,[14] in support of its conclusion that Iowa law "recognizes" constructive possession, and then determined that the Dealers had constructive possession because the lime "in a particular pile, was identified to the contract. . . ."

While the bankruptcy court was correct in its statement that Iowa courts recognize the concept of constructive possession, our examination of the cases it cited and inquiry into the application of constructive possession by Iowa courts indicates that the bankruptcy court erred in its determination that the identification of a fungible good – *i.e.*, solely by the reference in a contract to an undivided share in an existing,

---

[13] In order of citation: *Jacobson v. Aetna Cas. & Sur. Co.*, 46 N.W.2d 869, 871 (1951); *Chrysler Corp. v. Adamatic, Inc.* 208 N.W.2d 97, 107 (Wis. 1973), *overruled on other grounds by Daniel v. Bank of Hayward*, 425 N.W.2d 416 (Wis. 1988); and *Havens Steel Co. v Commerce Bank, N.A.* (*In re Havens Steel Co.*), 317 B.R. 75 (Bankr. W.D. Mo. 2004).

[14] 417 N.W. 2d 443 (Iowa 1987).

specified fungible bulk – satisfies the requirements of constructive possession under Iowa law for purposes of a priority contest between a purchaser and a secured creditor of the seller.

First, the reference to constructive possession in the lead case cited by the Dealers and the bankruptcy court, *First Nat'l Bank in Lenox v. Lamoni Livestock,* is dicta and offers no assistance in formulating a rule which can be used to determine whether an entity has constructive possession of a thing. In *Lamoni* the Iowa Supreme Court was faced with a determination of whether the sale of farm products through a marketing agent terminated the goods' character as "farm products." Under Iowa law, a secured creditor's interest in farm goods continues after the farm goods are sold if they are purchased from a farmer "in possession" of the goods even if the sale is in the ordinary course of business, so the distinction was important. Goods retain their character as "farm products" as long as they are in the possession of a debtor engaged in farming operations.[15]  The *Lamoni* court concluded that the delivery of farm products to a marketing agent did not convert them from "farm products" to the marketing agent's "inventory," such that the secured creditor's interest would be cut off by a purchaser of that inventory.  The court's discussion of constructive possession was limited to an analogy drawn to the "property law concept" of constructive possession and used only to buttress the court's conclusion that for purposes of the definition of farm products under § 554.9109 (Comment 4) a farmer is not divested of "possession" if he transfers his farm products to a marketing agent. And that discussion does not support the bankruptcy court's conclusion that the Dealers had constructive possession of the lime.

_____

[15] *Id.* at 445-46 (citing UCC § 9-109 cmt. 4 (1972)).

10

The other cases cited by the bankruptcy court are similarly unhelpful. In *Jacobson v. Aetna Casualty & Surety Co.*,[16] the Minnesota Supreme Court concluded that an insurance contract's unqualified reference to "possession" did <u>not</u> include constructive possession based on the context in which it was used.[17] The *Chrysler Corp.* court specifically rejected constructive possession as the basis for a claim of BIOC status on the facts before it. And the bankruptcy court in *Havens Steel Co.,* did not actually discuss the basis for its determination that the buyer in that case had constructive possession of the steel, although it ultimately found that constructive possession satisfies the BIOC possession requirement.[18]

Second, there is a significant body of Iowa case law on constructive possession indicating that the identification of fungible goods by reference to an undivided share in an existing, specified fungible bulk, is insufficient to support a finding of constructive possession.

The first reported case in Iowa recognizing the concept of constructive possession dates back to 1859, in *Nevan v. Roup*.[19] And, interestingly enough, that

---

[16] 46 N.W.2d 868 (Minn. 1951).

[17] In *Jacobson*, an insurance company denied coverage to an insured claiming a loss for the theft of his car where he allowed a thief to take his car under the mistaken belief that the "thief" intended to purchase the car and was only taking it for a test drive. The insured argued – unsuccessfully – that the coverage exclusion for voluntary surrenders of possession did not apply because he retained "constructive possession" of the car.

[18] *In re Havens Steel Co.*, 317 B.R. at 87-88.

[19] *See Nevan V. Roup*, 8 Clarke 207, 8 Iowa 207, 1859 WL 198 (Iowa 1859).

case provides a useful guideline for determining when an entity has constructive possession of a thing.

> Delivery is, no doubt, essential to a pledge. Possession of the pledge must be delivered to the pledgee. *But this possession may be according to the nature of the thing pledged.* The delivery may be symbolical, or of a part for the whole. The delivery of a key, where the goods are locked up, is so far a delivery of the goods that it will support an action of trespass against a subsequent purchaser, who gets possession of them.[20]

Unfortunately, even though the *Nevan* court was discussing constructive possession in the context of a priority contest in fungible goods (oats), the court's ruling was limited to an assignment of error to the lower court for failing to give a jury instruction on constructive possession. Nonetheless, the notion that possession, and by implication, "constructive possession," is dependent on the nature of the thing is instructive.

Moving ahead fifteen years, in 1874 the Iowa Supreme Court provided a workable, and we believe still viable, guideline to determine when a purchaser may claim constructive possession of a good purchased in the context of a priority contest between the purchaser and a secured creditor of the seller.

> The law contemplates that there shall be a change of possession – something to indicate the fact of the purchase, the change of ownership of the property by the claimant. If, therefore, the property be left with the seller, whose relations to it continued unchanged so far as the world may know by the acts of the parties, the possession will be regarded as continuing in him.[21]

---

[20] *Id*. at *3 (emphasis added).

[21] *Boothby & Co. v. Brown*, 40 Iowa 104, 1874 WL 609, *2 (Iowa 1874).

Stated more concisely, "The possession of the person claiming personal property as against the creditors of his vendor must be visible, apparent, and actual to strangers to the transaction."[22]

Applying these guidelines to the present situation, it is clear that the Dealers never obtained constructive possession of the lime. In order for the Dealers to have taken constructive possession of goods of this nature, *i.e.*, a fungible commodity, they would have had to have taken some visible and apparent step to inform the world of the change in possession from the Debtor to the Dealers. But they did not. The lime remained in undifferentiated piles on the Debtor's premises for close to a year, apparently available for sale to other prospective buyers or as security for the indebtedness to United Bank. Therefore, under Iowa law, the Dealers never obtained constructive possession of the lime.

This application of Iowa law, and the result flowing therefrom, is also consistent with, if not mandated by the definition of BIOC in § 554.1201(9). As discussed above, a buyer not in possession of goods purchased qualifies as a BIOC only if he has a right to recover those goods. That right arises where the buyer has a right to replevin under § 554.2502 or a right to specific performance under § 554.2716. The right of replevin under § 554.2502 arises, in turn, when the goods to a contract have been "identified" <u>and</u> the seller becomes insolvent within ten days of the sale. If "identification" alone, as that term is used in the context of § 554.2502 for fungible goods (*i.e.*, reference in the contract to an undivided share in an existing, specified fungible bulk) is sufficient to establish constructive possession, then the

---

[22] *McAfee v. Busby*, 28 N.W. 623, 624 (Iowa 1886).

insolvency prong of § 554.2502 is rendered surplusage. If, on the other hand, the constructive possession of fungible goods requires more than identification, as the Iowa cases cited above suggest, all of the terms of § 554.2502 and, in turn, § 554.1201(9), can be given meaning.[23]

Finally, although we do not reach the issue of whether constructive possession satisfies the "possession" requirement in § 554.1201(9), we note that the visible and apparent identification of goods (versus the "invisible" identification accomplished by reference in a contract) would better maintain the balance of risk achieved by the BIOC exception to an inventory lender's continuing security interest. Section § 554.9320 places the risk of loss in these circumstances on an inventory lender because it is presumably in a better position to monitor its collateral, whereas BIOCs cannot reasonably be expected to investigate potential liens before they purchase goods from a dealer.[24] Visibly identifying goods upon sale permits a BIOC to purchase goods free and clear of a lender's security interest while preserving a lender's ability to monitor the status of its collateral. In contrast, if identification is "invisible," then the lender has no way of knowing whether its collateral has been sold and, potentially, whether it needs to take steps to protect its secured position.

---

[23] *See Elwood v. Jeter*, 386 F.3d 842, 847 (8th Cir. 2004) (stating rule that courts should be reluctant to treat statutory terms as surplusage and that it is a court's duty to give effect, if possible, to every clause and word of a statute).

[24] *See* Lori S. Segal, *The Buyer-Secured Party Conflict and Section 9-307(1) of the UCC: Identifying When a Buyer Qualifies for Protection as a Buyer in Ordinary Course*, 50 Fordham L.Rev. 65, 680-817 (1982) (citing cases).

## V. CONCLUSION

For the reasons stated above, we reverse the bankruptcy court's order granting the Dealers' motion to amend and the resulting amended judgment in favor of Dealers.

———————————————