STATE of Minnesota, Respondent,

v.

C. Dennis SIMION, Appellant.

No. A06–83.

Supreme Court of Minnesota.

March 13, 2008.

## OPINION

GILDEA, Justice.

Appellant C. Dennis Simion was charged with felony theft by swindle in violation of Minn.Stat. § 609.52, subd. 2(4) (2006), felony damage to property in violation of Minn.Stat. § 609.595, subd. 1(3) (2006), and felony theft from a person with a superior right of possession in violation of Minn.Stat. § 609.52, subd. 2(2) (2004). Following a jury trial, Simion was found guilty of misdemeanor criminal damage to property and felony theft from a person with a superior right of possession, and not guilty of theft by swindle. Simion thereafter moved the district court for judgment of acquittal and a new trial, claiming that the district court lacked jurisdiction and that the State failed to prove the elements of the charged crimes. The district court denied both motions, convicted Simion of misdemeanor criminal damage to property and felony theft, and ordered that Simion pay restitution in the amount of $1,509.23. The court of appeals affirmed the convictions, but reversed and remanded on the restitution issue. *State v. Simion,* No. A06–83, 2007 WL 1412764 (Minn.App. May 15, 2007). Because we conclude that the district court had jurisdiction over the theft charge, but not over the criminal damage to property charge, we affirm in part, reverse in part and remand.

This case arises from the employment relationship between Simion and President Lines, Inc. ("PLI"). Simion was an over-the-road truck driver for PLI and he used a truck owned by PLI to make deliveries from PLI to various places in the United States. PLI is located in Minneapolis and Simion resides in Wisconsin. PLI permitted Simion to use its truck to travel to his home in Wisconsin and to keep the truck on his property in Wisconsin when he was not on duty.

Around June 2003, Simion asked the president of PLI to purchase a custom captain seat for Simion to use in the PLI truck assigned to him. The president approved the purchase with the understanding that $50 per week would be deducted from Simion's paycheck to reimburse the company for the cost of the seat. Based on this understanding, PLI purchased the captain seat for $1,709.23 and paid $118 to have it installed in the truck assigned to Simion. According to PLI, the parties agreed that once Simion reimbursed PLI for these costs, he would own the captain seat. PLI's president testified that he "made it very clear that the seat was going into a truck that was owned by President

Lines and that it would be President's seat until it was fully paid for," at which point Simion would own the seat. In other words, according to the State's witnesses, PLI owned the seat and Simion was going to buy it from PLI through the deductions from his paycheck.[1]

At some point, the employment relationship between Simion and PLI became strained, and by September 2003, Simion became convinced that PLI was not paying him everything he thought he was owed. The situation escalated on September 21, 2003, when Simion returned to PLI headquarters to turn in his paperwork after delivering a load and expected to pick up a paycheck. PLI did not have a paycheck for him. Simion testified that when PLI did not produce his check, he made up his mind that he would give PLI one more chance to pay him what he thought he was owed. Simion testified that he decided that he would have to be paid by September 23, when he was scheduled to return to PLI to pick up his next load. As Simion explained at trial, on September 21 he decided to pick up the next load and deliver it if PLI paid him, but if his check was not ready on September 23, when he was scheduled to return to PLI, he was going to quit his job at that time.

After making this decision on September 21, Simion left PLI headquarters and drove the truck to his home in Wisconsin. He removed all of his "personal belongings," including the captain seat, from the truck and reinstalled the original stock seat. Simion explained at trial that he removed these items because "either I would have got my check [when I returned to PLI on September 23] and [would] pick [ ] up my load and [go] back by the house and put my stuff back in it or I would have

quit." He explained that "if I got my check [on September 23], I was going to put the [captain] seat back in." But if he did not receive his check and would be quitting, he did not want to have to remove his personal items from the truck in Minneapolis.

On September 23, Simion drove to the PLI office as he had planned and the paycheck he expected was not there. According to PLI's president, Simion entered the president's office and said, "I want my f* * *ing money right now or I'm going to take it out in trade." Simion then demanded that he and PLI's president take the dispute "outside," at which point the president called security. Minneapolis police were also notified of Simion's threats.

After Simion left the premises, PLI's president, its general manager, and a police officer located the truck assigned to Simion parked behind the loading docks near their facility. They inspected the truck and found that it had been damaged. Specifically, armrests were missing, seat belts were cut, the air line to the seat was "cut with a knife," speakers were torn out, the radio wire was cut, and dome lights were broken. PLI's general manager testified that he had inspected the interior and exterior of the truck two weeks before the September 23 incident and had found it to be "very clean and in very good shape." Simion admitted at trial that he had cut the truck's air line and that his daughter mistakenly removed a fire extinguisher from the truck, but he testified that the truck was already damaged to a certain extent when it was assigned to him in 2002. The total cost of the repairs to the interior and exterior of the truck was $1,862.86. The person who performed the

1. The State's evidence showed that as of September 23, Simion had paid $368 toward the cost of the seat—five payments of $50 for the captain seat and one payment of $118 for the cost of installation.

repair work on the truck testified that in his opinion the damage to the truck was caused deliberately, and not by ordinary wear and tear.

On October 21, 2003, police executed a search warrant at Simion's Wisconsin residence and found the captain seat in his garage. The seat was seized and eventually returned to PLI. The State subsequently charged Simion with felony criminal damage to property, felony theft from a person with superior right of possession, and felony theft by swindle. The complaint alleges that Simion vandalized the truck, removed the custom seat, and submitted a false claim for reimbursement for the cost of tires that, in fact, had not been purchased.

At the close of the evidence and before the jury was charged, Simion moved for judgment of acquittal. He argued that the court lacked jurisdiction over the damage to property and theft offenses because they were committed in Wisconsin and that the State did not prove the elements of the crime of theft from a person with a superior right of possession, Minn.Stat. § 609.52, subd. 2(2). The district court denied the motion and charged the jury. The jury found Simion guilty of misdemeanor criminal damage to property and felony theft, and not guilty of theft by swindle.[2] After the verdict, Simion renewed his motion for judgment of acquittal and he argued in the alternative that he was entitled to a new trial. The district court denied the motions, and Simion appealed. The court stayed sentencing pending Simion's appeal, and ordered restitution in the amount of $1,509.23.

On appeal, Simion argued that no part of the offenses for which he was convicted occurred in Minnesota and that therefore there was no jurisdiction in Minnesota. He also argued that the State failed to prove that he committed the elements of the crime of theft from a person with superior right of possession, Minn.Stat. § 609.52, subd. 2(2), that the jury instructions on the theft charge were erroneous, that the prosecutor committed prejudicial misconduct requiring a new trial, and that PLI was not entitled to any restitution.

The court of appeals held that jurisdiction over the theft charge existed in Minnesota because Simion "quit and left the truck at PLI in Minnesota without the captain's seat. * * * [W]hile [Simion] took the seat out of the truck in Wisconsin, the act caused an injury to PLI, the party with a superior right of possession, in Minnesota, and jurisdiction was proper." *Simion*, 2007 WL 1412764, at *2. With respect to the criminal damage to property charge, the court found that there was jurisdiction in Minnesota because Simion's "act caused a result in Minnesota." *Id.* The court also found that the evidence was sufficient to sustain Simion's theft conviction, that the district court did not abuse its discretion with regard to the jury instructions, that any prosecutorial misconduct did not require a new trial, and that a remand was necessary on the restitution question. *Id.* at *3–8. We granted Simion's petition for review.

I.

■ We first consider Simion's argument that because the offenses were com-

---

**2.** The jury found Simion guilty of criminal damage to property, but in answer to special interrogatories found that the damage reduced the value of PLI's truck by $250 or less. Accordingly, Simion was convicted of misdemeanor criminal damage to property in violation of Minn.Stat. § 609.595, subd. 3 (2006).

In 2007, the legislature amended Minn.Stat. § 609.595, subd. 1(3), to increase the threshold for felony damage to property from $500 to $1,000. Act of May 7, 2007, ch. 54, art. 2, § 17, 2007 Minn. Laws 206, 244 (codified at Minn.Stat. § 609.595, subd. 1(3) (Supp. 2007)).

mitted in Wisconsin, there was no subject matter jurisdiction in Minnesota. "We review issues of jurisdiction de novo." *State v. R.M.H.*, 617 N.W.2d 55, 58 (Minn.2000). Jurisdiction is the court's "power to hear and decide disputes." *State v. Smith*, 421 N.W.2d 315, 318 (Minn.1988). Under the common law, "the criminal jurisdiction of state courts was limited to crimes committed within the territorial boundaries of the state." *State v. McCormick*, 273 N.W.2d 624, 625 (Minn.1978). But the legislature, by adopting Minn.Stat. § 609.025 (2006), expanded the jurisdiction of Minnesota courts to hear and try criminal offenses. This statute provides as follows:

> A person may be convicted and sentenced under the laws of this state if the person:
>
> (1) commits an offense in whole or in part within this state; or * * *
>
> (3) being without the state, intentionally causes a result within the state prohibited by the criminal laws of this state.
>
> It is not a defense that the defendant's conduct is also a criminal offense under the laws of another state or of the United States or of another country.

Minn.Stat. § 609.025. The State contends that jurisdiction existed under both paragraphs 1 and 3 of the statute for the charges at issue here. We examine each charge in turn to determine whether jurisdiction existed under either paragraph 1 or paragraph 3 of section 609.025.[3]

### A. *Criminal Damage to Property*

■ To prove criminal damage to property, the State had to show that Simion intentionally caused damage to PLI's property without PLI's consent to the damage. Minn.Stat. 609.595. The State claims that because the property Simion damaged belonged to PLI, a Minnesota business located in Hennepin County, and because PLI withheld its consent within Minnesota, jurisdiction exists under paragraph 1 of section 609.025. But the crime of damage to property was complete when Simion acted in Wisconsin. PLI's reaction to the damage, its physical presence in Minnesota, and the fact that PLI experienced economic harm within Minnesota are not relevant considerations as to the determination of jurisdiction under paragraph 1 of section 609.025. Paragraph 1 requires that *the defendant* commit at least some part of the offense in Minnesota. Minn.Stat. § 609.025(1). There is no evidence in the record showing that Simion committed any of the damage to the truck in Minnesota. Accordingly, we hold that jurisdiction did not exist over the criminal damage to property charge under paragraph 1 of section 609.025.

■ The State also argues that jurisdiction exists under paragraph 3 of section 609.025 because Simion caused a result—economic loss to a Minnesota resident—within Minnesota. The court of appeals seems to have agreed, concluding as follows:

> The truck belonged to PLI, which was headquartered in Minnesota, and PLI did not consent to appellant causing damage to the truck. Additionally, appellant drove the truck back to Minnesota where it was repaired. Therefore, appellant caused damage to PLI's truck while in Wisconsin, but the act caused a

---

**3.** This first question comes to us for review of the district court's post-trial decision to deny Simion's motion for judgment of acquittal or for a new trial. Because of this procedural posture, the inquiry is "narrow" and we examine whether all of the evidence, considered in the light most favorable to the State, created a question of fact as to whether jurisdiction existed. *State v. Slaughter*, 691 N.W.2d 70, 76 (Minn.2005); *see also* Minn. R.Crim. P. 26.03, subd. 17.

result in Minnesota and jurisdiction was proper.

*Simion,* 2007 WL 1412764, at *2. This conclusion of the court of appeals requires that we consider whether jurisdiction existed in this case under paragraph 3 of section 609.025 because the corporate victim resides, and therefore suffered injury, in Minnesota.

■ To consider this question, we begin with the Minnesota Constitution. Pursuant to Article I, Section 6 of the Minnesota Constitution, a criminal defendant has a right to a trial by an impartial jury of "the county or district wherein the crime shall have been committed." *See also* U.S. Const. amend VI (providing that a defendant shall enjoy the right to a trial by an impartial jury of "the state and district wherein the crime shall have been committed."). Consistent with the constitutional provision, "some operative event" or "part of the crime charged must be 'committed' within" Minnesota in order for Minnesota courts to have jurisdiction. *Smith,* 421 N.W.2d at 319. For example, in *Smith* we held that the Minnesota court did not have jurisdiction over a prosecution of a defendant for murder when all available evidence indicated that the crime had been committed outside of Minnesota. We noted that the location of the victim's body in Minnesota did not provide a sufficient connection to Minnesota to support jurisdiction over the murder charge. *Id.* at 320.

The constitutionally-based nexus principle we applied in *Smith* is further illustrated by our analysis in *State v. McCormick,* 273 N.W.2d 624 (Minn.1978). In *McCormick,* the defendant and his wife divorced in California and the wife, having been granted custody of the couple's children, moved with them to Minnesota. *Id.* at 625. Later, she obtained an order from a Minnesota district court restraining the defendant from visiting the children. *Id.*

The defendant thereafter removed the children to California. *Id.* The defendant was charged under a Minnesota statute that made it a crime to "intentionally detain [ ] [one's] own child * * * outside the state of Minnesota, with intent to deny another's rights under an existing court order." *Id.* (citing Minn.Stat. 609.26 (1978)). Based on these facts, the State argued that jurisdiction existed in Minnesota because the defendant's actions "cause[d] a result within the state that is detrimental to protectible interests of the state and its citizens." *Id.*

Notwithstanding the fact that his former wife undoubtedly suffered injury in Minnesota due to the defendant's actions in removing the children from Minnesota, we held that the statute was unconstitutional. *Id.* at 628. We reached this conclusion because the statute purported to allow prosecution in Minnesota for criminal conduct that occurred entirely "outside the State of Minnesota." *Id.* at 625; *see also id.* at 628 ("Defendant constitutionally and historically can only be tried in the district where the crime occurred, a right which experience demonstrates is designed to further the ends of justice."). The analysis in *McCormick* supports the conclusion that, as a matter of constitutional law, causing injury to a Minnesota resident through acts committed entirely outside Minnesota is not enough, by itself, to support criminal jurisdiction in Minnesota. *See Smith,* 421 N.W.2d at 320 (noting that in *McCormick* we "struck down a statute that made totally extraterritorial activity a crime in Minnesota").

The test that emerges from our precedent to determine whether the district court had jurisdiction asks whether "some operative event, a triggering event," for the crime occurred in Minnesota. *Id.* at 319. We said in *Smith* that "[t]he event needed, as required by the Minnesota and

United States Constitutions, is that some part of the crime charged must be 'committed' within the jurisdiction." *Id.* The result of the criminal behavior caused in Minnesota by acts committed outside Minnesota, as set forth in paragraph 3 of Minn.Stat. § 609.025, could satisfy the test if the result is part of the crime or related to an element of the crime. Several states have recognized this rule. *See Cousins v. State*, 202 Ark. 500, 151 S.W.2d 658, 660 (1941) (concluding that the overdraft statute was not violated by drawing funds from a bank outside the state, even though the act resulted in defrauding a resident of the state in whose favor the draft was drawn); *State v. Cain*, 360 Md. 205, 757 A.2d 142, 145 n. 2 (2000) (citing *Pennington v. State*, 308 Md. 727, 521 A.2d 1216, 1219 (1987)) (noting that the intended "result" or "effect" can be "the basis of territorial jurisdiction only if the definition of the crime includes such a result"); *Commonwealth v. Carroll*, 360 Mass. 580, 276 N.E.2d 705, 709 (1971) ("[W]e have held that the crime of larceny, which includes the element of asportation, may be punished in Massachusetts if the thief brings the stolen goods into this State after acquiring them outside the jurisdiction."). The language of our statute also supports this rule because it provides that jurisdiction exists if the result is "prohibited by the criminal laws of this state." Minn. Stat. § 609.025(3).

When we apply the "operative event" test to the criminal damage to property charge it is clear that jurisdiction did not exist in Minnesota. Simion committed no criminal behavior relevant to the damage to property charge in Minnesota. As noted above, the crime was complete in Wis-consin when Simion damaged the truck while it was at his residence, and the victim's economic loss in Minnesota is neither part of the crime nor related to an element thereof. *See Sykes v. State*, 578 N.W.2d 807, 811, 812 (Minn.App.1998), *rev. denied* (Minn. July 16, 1998) (noting that a Minnesota "victim's reaction to the threat is circumstantial evidence relevant to the element of intent" and holding that jurisdiction existed under Minn.Stat. § 609.025(3) for a terroristic threats charge because "the crime of making terroristic threats was complete when [the defendant's] threats were received by the victims in Minnesota"). The court of appeals therefore erred in concluding that jurisdiction existed over the damage to property charge based only on the fact that the alleged victim was located here and therefore felt the effects of the crime in Minnesota. Because no operative event occurred within Minnesota, we hold that the district court did not have subject matter jurisdiction over the damage to property charge and we reverse Simion's conviction of that charge.

**B. Theft from a Person with Superior Right of Possession**

■ The theft statute under which Simion was charged provided that a person is guilty of theft if he or she, "having a legal interest in movable property, intentionally and without consent, takes the property out of the possession of a * * * person having a superior right of possession, with intent thereby to deprive the * * * person permanently of the possession of the property." Minn.Stat. § 609.52, subd. 2(2) (2004).[4] The State argues that jurisdiction was proper under both paragraphs 1 and 3 of section 609.025.

4. In 2005, this statute was amended to insert "with or without" to the beginning of the clause. Act of June 2, 2005, ch. 136, art. 17, § 31, 2005 Minn. Laws 901, 1138. This amendment is inapplicable to the analysis in this case because the amendment went into effect after the commission of the crime.

Specifically, the State argues that jurisdiction exists because the captain seat belonged to PLI, a business located in Hennepin County; PLI withheld consent to the taking of the seat in Minnesota; the "locus of PLI's superior right to possess was in Minnesota, where the business was located and where the truck was officially housed as part of PLI's fleet of vehicles"; and Simion formed the intent to permanently deprive PLI of the captain seat while in Minnesota on September 21, and then returned the truck without the seat to PLI's office in Minnesota on September 23.

We consider first whether jurisdiction existed under paragraph 1 of the statute. Unlike the damage to property crime, for which Simion committed all of the criminal behavior in Wisconsin, the record establishes that "some operative event, a triggering event," for the crime of theft occurred in Minnesota. *Smith*, 421 N.W.2d at 319. Specifically, based on the evidence at trial, Simion determined that if his paycheck was not ready for him on September 23 when he returned to Minneapolis with the truck, he was going to leave his employment with PLI and keep the captain seat, which he had removed from the truck and left on his property in Wisconsin. When Simion removed the seat from the truck in Wisconsin, the crime cannot be said to have been complete because of Simion's plan to return to Minnesota, in essence, to give his employer another chance to pay him what he felt he was

owed. As Simion told PLI when he was in Minnesota on September 23, PLI could either give him his money or he would "take it out in trade." Simion's intent to permanently deprive PLI of the captain seat was formed at least in part in Minnesota. His conduct at PLI on September 23 provides a sufficient nexus to Minnesota to meet the plain terms of paragraph 1 of section 609.025 and the constitutionally-based nexus requirement we applied in *Smith* and *McCormick*.

This conclusion is reinforced by the fact that because of the employment relationship, Simion had the right to use PLI's truck with the captain seat in it. When that relationship ended in Minnesota on September 23, Simion's right to continue using the truck and the seat also ended. A "triggering event" then for the theft charge happened in Minnesota when Simion went to PLI headquarters on September 23 to pick up his check and it was not there for him. *Smith*, 421 N.W.2d at 319. When Simion's employment ended on September 23 so did his right to continue to use PLI's truck and the captain seat. An operative event for the theft crime then occurred when Simion's permission to continue to use the truck and the seat ended. According to the evidence, that event occurred on September 23 in Minnesota. Under the unique circumstances of this case, we hold that the district court had jurisdiction over the theft charge under paragraph 1 of section 609.025.[5]

---

**5.** This result is consistent with the conclusions reached by other courts when confronted with theft charges arising within the context of an employment relationship. *See Wright v. State*, 339 Md. 399, 663 A.2d 590, 590, 591 (1995) (holding that a Maryland court had jurisdiction over the theft charge against the defendant truck driver who left Maryland in a company truck with permission from his employer in order to deliver cargo to several other states, where the defen-

dant "was not authorized to retain the truck for his own use, and was expected to return the vehicle to the trucking company upon completion of his deliveries"); *State v. White*, 230 Mont. 356, 750 P.2d 440, 440, 441 (1988) (holding that a Montana court had jurisdiction over a theft charge against a defendant who took possession of his employer's truck and left the state with the employer's permission, but who unlawfully assumed possession of the truck while in another state and failed

The conclusion that jurisdiction existed under paragraph 1 of section 609.025 makes it unnecessary for us to consider whether the district court also had jurisdiction under paragraph 3 of the statute. We affirm the conclusion of the court of appeals that the district court had jurisdiction over the theft charge.

## II.

■ We next consider whether the district court erred in denying Simion's motion for judgment of acquittal because, as he argues, his conduct did not meet the elements of the crime of theft from a person with a superior right of possession under Minn.Stat. § 609.52, subd. 2(2). A motion for judgment of acquittal is properly denied where the evidence, viewed in the light most favorable to the State, is sufficient to sustain a conviction. *State v. Slaughter,* 691 N.W.2d 70, 75 (Minn.2005); *see also* Minn. R.Crim. P. 26.03, subd. 17(1) (providing that "[a]fter the evidence on either side is closed, the court on motion of a defendant or on its initiative shall order the entry of a judgment of acquittal of one or more offenses charged * * * if the evidence is insufficient to sustain a conviction").

Simion was convicted of violating Minn. Stat. § 609.52, subd. 2(2), which provided that a person is guilty of theft if he or she, "having a legal interest in movable property, intentionally and without consent, takes the property out of the possession of a * * * person having a superior right of possession, with intent thereby to deprive the * * * person permanently of the possession of the property." Simion alleges that the evidence failed to prove that (1)

he had a "legal interest" in the seat; (2) he took the seat "out of the possession" of PLI; and (3) PLI had a "superior right of possession" to the seat. We examine each element in turn.

### A. Legal Interest

■ Simion first argues that he did not have a legal interest in the captain seat. The statute does not define "legal interest," but generally the phrase refers to "[a]n interest recognized by law, such as legal title." *Black's Law Dictionary* 829 (8th ed.2004). While Simion did not have legal title to the seat when he removed it from the truck, he did have a protectable interest in the seat. This is so because he had paid at least $368 toward the purchase of the seat from PLI. We therefore hold that the evidence satisfied the "legal interest" element of Minn.Stat. § 609.52, subd. 2(2).

### B. Possession

■ Simion next argues that the evidence does not establish that he took the seat out of PLI's possession. Specifically, Simion contends that he had possession, not just custody, of the seat during the time he was making installment payments and that he thus did not take the seat "out of the possession" of PLI when he removed it from the truck. *See* Minn.Stat. § 609.52, subd. 2(2). Minnesota Statutes § 609.52, subd. 2(2) does not define "possession," but the term is used interchangeably to describe actual possession[6] and constructive possession. *Baehr v. Penn–O–Tex Oil Corp.,* 258 Minn. 533, 537, 104 N.W.2d 661, 664 (1960).

---

to return the truck to his employer in Montana).

**6.** Actual possession is "possession in its ordinary or original sense." *Jacobson v. Aetna Cas. & Sur. Co.,* 233 Minn. 383, 387, 46

N.W.2d 868, 871 (1951); *see* 73 C.J.S. *Property* § 52 (2004) (" 'Actual possession' of a chattel exists when the thing is in the actual manual custody of the party * * *.").

Constructive possession "is usually said to mean the legal right to possession which follows from title without actual possession." *Id.* at 537, 104 N.W.2d at 664. Such possession exists where an owner intentionally gives actual possession-direct physical control-of the property to another in order for that person to do some act for the owner to or with the property. *Jacobson v. Aetna Cas. & Sur. Co.*, 233 Minn. 383, 388, 46 N.W.2d 868, 871 (1951). In *Jacobson* we said that where the master surrenders physical control of the property to the servant for a "use or purpose for the direct benefit" of the master, the master has constructive possession while the servant has mere custody of the property. 233 Minn. at 387, 389–90, 46 N.W.2d at 871–72. In this case, the evidence, when construed in the light most favorable to the State, supports the conclusion that PLI had constructive possession of the seat at all times before Simion fully repaid PLI for the purchase and installation of the seat. That PLI allowed Simion to use the seat in the PLI truck assigned to Simion does not negate this conclusion; it shows only that PLI gave Simion permission to use the seat in connection with his employment until he paid for it, at which time it would become his property. We hold that the evidence supports the possession element. Minn. Stat. § 609.52, subd. 2(2).

### C. Superior Right of Possession

Finally, Simion argues that PLI's right to possess the seat was not superior to his and that this element therefore was not satisfied. The element at issue requires Simion to have taken "property out of the possession of a pledgee or other person having a superior right of possession." Minn.Stat. § 609.52, subd. 2(2). Simion relies on our decision in *State v. Cohen*, 196 Minn. 39, 263 N.W. 922 (1935), to support his argument that the evidence failed to prove that PLI had a superior right of possession to the seat. Advisory committee comments to the theft statute, Minn.Stat. § 609.52, subd. 2(2), indicate that the *Cohen* decision was the impetus for the enactment of that section.[7] Minn. Stat. Ann. § 609.52, subd. 2(2), advisory committee cmt. (West 2003).

While the statute plainly covers the situation at issue in *Cohen* through its use of the word "pledgee," it is not, as the court of appeals noted, limited to only those situations presenting the same facts as in *Cohen*. *Simion*, 2007 WL 1412764, at *3. The statute makes this plain because it provides that theft can be committed against some "other person" in addition to a pledgee. Minn.Stat. § 609.52, subd. 2(2).

Here, PLI bought the seat and had an ownership interest in it, pursuant to the parties' agreement, until Simion reimbursed PLI for its seat-related expenses. Because Simion had only repaid PLI a small portion of his total debt when he took the seat, we hold that the evidence supports the conclusion that PLI's right to the seat was superior to Simion's right for the purpose of Minn.Stat. § 609.52, subd. 2(2).

We therefore hold that the district court did not err in denying Simion's motion for judgment of acquittal on the charge of theft from a person with a superior right of possession.

---

7. In *Cohen*, the owner of a fur coat was prosecuted for larceny after the owner engaged a furrier to make certain alterations and repairs, refused to remit payment upon completion of the work, and then fraudulently absconded with the coat. 196 Minn. at 40– 41, 263 N.W. at 923–24. We said that "[a] person may be guilty of larceny of his own property if taken from the possession of one who has a lien thereon under which possession may lawfully be retained until the lien is discharged." *Id.* at 42, 263 N.W. at 924.

### III.

Simion next alleges that he is entitled to a new trial because of prosecutorial misconduct.

#### A. Unobjected-to Conduct

 Simion argues that the prosecutor committed misconduct by asking him "were they lying" questions and by denigrating the defense. Defense counsel did not object to this conduct at trial. Under *State v. Griller*, before an appellate court reviews unobjected-to trial error, there must be error that is plain and the error must affect substantial rights. 583 N.W.2d 736, 740 (Minn.1998). If these elements are met, "we will consider whether a new trial is necessary to ensure fairness and the integrity of judicial proceedings." *Id.* at 742. An error is plain if it "contravenes case law, a rule, or a standard of conduct." *State v. Ramey*, 721 N.W.2d 294, 302 (Minn.2006). In the context of prosecutorial misconduct, if the defendant shows that there was error, and that it was plain, the burden shifts to the prosecution to demonstrate that the error did not affect the defendant's substantial rights. *Id.*

 First, Simion argues that the prosecutor committed misconduct by asking him "were they lying" questions during cross-examination. Generally, questions designed to elicit testimony from one witness about the credibility of another have no probative value and are considered improper and argumentative. *State v. Pilot*, 595 N.W.2d 511, 518 (Minn.1999) (in general, "were they lying" questions are improper). But the prosecutor may ask these questions "when the defendant '[holds] the issue of the credibility of the state's witnesses in central focus.' " *State v. Morton*, 701 N.W.2d 225, 233 (Minn.2005) (quoting *Pilot*, 595 N.W.2d at 518).

The prosecutor's four "were they lying" questions related to (1) PLI's general manager's testimony that drivers were not allowed to make reimbursement checks out to themselves, (2) the general manager's inspection of the truck, and (3, 4) the general manager and repairman's testimony that the damage to the truck was caused deliberately. Even if the first question constituted error that could be considered plain, it did not affect Simion's "substantial rights" because it was asked in the context of the theft by swindle charge, of which Simion was acquitted.

 The remaining three questions do not require reversal because Simion held the credibility of the State's witnesses in "central focus." In *State v. Dobbins*, we concluded that the prosecutor did not commit misconduct by asking the defendant if a State's witness was lying, because the defendant held the credibility of that witness in "central focus." 725 N.W.2d 492, 511 (Minn.2006), *cert. denied,* —— U.S. ——, 127 S.Ct. 3021, 168 L.Ed.2d 741 (2007). There, a witness testified that he saw the defendant shoot the victim. *Id.* The defendant "vigorously denied" the accusation and further testified that the witness committed the crime. *Id.* In the present case, Simion similarly maintained throughout the trial and during closing argument that PLI's version of the events was wrong, that PLI in fact owed him money, and that the testimony of PLI's general manager and the repairman was incorrect. Under *Dobbins*, the "central focus" of Simion's defense was to undermine the credibility of the State's witnesses and deny that he was involved in any wrongdoing. *See id.* Therefore, Simion has not met his burden to show that the prosecutor's "were they lying" questions were error.

 Second, Simion argues that the prosecutor improperly "denigrated the de-

fense" during his closing argument when he commented that Simion took "every opportunity to dirty up President Lines by accusing and insinuating that they were violating some rule or regulation." A prosecutor is allowed "to argue that there is no merit to a particular defense or argument," but "may not generally belittle a particular defense in the abstract." *State v. Ashby*, 567 N.W.2d 21, 28 (Minn.1997). The prosecutor's comment here was designed to draw the jury's attention to Simion's attempt to distract from the criminal issues at trial. We hold Simion did not meet his burden to show that this argument was error.

## B. Objected-to Conduct

██ Simion also argues that the prosecutor committed misconduct during his closing argument to which Simion objected. Simion argues that the prosecutor's statements about Simion's ability to tailor his testimony to the rest of the evidence, made during the State's closing argument, constitute prosecutorial misconduct. Simion also argues that the prosecutor committed misconduct by implying in rebuttal argument that Simion conspired with his attorney to fabricate testimony. For objected-to prosecutorial misconduct, this court applies a "harmless error test, the application of which varies based on the severity of the misconduct." *State v. Wren*, 738 N.W.2d 378, 389 (Minn.2007). The conduct at issue relates to the theft by swindle charge. As Simion was acquitted of this charge, we hold that he has not met his burden to show that any prosecutorial error was prejudicial.

## IV.

Finally, we consider the question of restitution. Simion argues that restitution is not appropriate as a matter of law in this case because the seat was returned to PLI. Simion relies on *State v. Gleuwve*, 307 Minn. 513, 239 N.W.2d 479 (1976), to support his restitution argument. In that case, the defendant stole an antique saddle and bridle from the victim and subsequently sold them to a third party. *Id.* at 514, 239 N.W.2d at 480. We concluded that because the property was returned to the victim, restitution was improper. *Id.* at 515, 239 N.W.2d at 480. *Gleuwve* does not dispose of the restitution question presented here. PLI alleged that it suffered economic loss due to the cost of the seat and its installation. A crime victim "has the right to receive restitution as part of the disposition of a criminal charge * * * against the offender if the offender is convicted." Minn.Stat. § 611A.04, subd. 1(a) (2006). In determining the amount of restitution to award, the district court considers several factors, including "the amount of economic loss sustained by the victim as a result of the offense." Minn.Stat. § 611A.045, subd. 1(a)(1) (2006); *see State v. Terpstra*, 546 N.W.2d 280, 282 (Minn. 1996).[8]

But PLI is entitled to be made whole and no more. We hold that the court of appeals properly remanded the issue of what, if any, restitution is appropriate to PLI. On remand, the district court must consider the fact that the seat was returned to PLI and the monetary payments that Simion had made before the theft to

---

8. The district court must resolve disputes regarding the amount of restitution by a preponderance of the evidence. Minn.Stat. § 611A.045, subd. 3(a). The offender has the burden to produce evidence to challenge the amount of restitution, *id.*, and must do so within 30 days of sentencing or of receiving written notice of the restitution request, *id.* at subd. 3(b). There is no evidence that Simion filed a formal challenge to the restitution award within the statutory period, but that does not decide the legal issue before this court—whether the victim should get restitution if stolen property is returned.

determine whether PLI has in fact suffered any economic loss from the theft.

Affirmed in part, reversed in part, and remanded.

DIETZEN, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.