*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1291**

State of Minnesota,
Respondent,

vs.

Amir Abd El Malak,
Appellant.

**Filed April 20, 2015
Affirmed
Larkin, Judge**

Washington County District Court
File No. 82-CR-12-1117

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Peter J. Orput, Washington County Attorney, Robin M. Wolpert, Assistant County Attorney, Stillwater, Minnesota (for respondent)

Stanley W. Keillor, Access Justice, Minneapolis, Minnesota (for appellant)

Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and Johnson, Judge.

**LARKIN**, Judge

Appellant challenges his two convictions of fourth-degree criminal sexual conduct, arguing that he received ineffective assistance of counsel and that the prosecutor engaged in prejudicial misconduct. We affirm.

## FACTS

In 2012, the Stillwater Police Department received reports from four women alleging that appellant Amir Abd El Malak, a massage therapist at Land of Pharaoh's Massage, engaged in nonconsensual sexual penetration or contact with each of them during a massage. Respondent State of Minnesota charged appellant with third- and fourth-degree criminal sexual conduct against S.K. and fourth-degree criminal sexual conduct against P.G., A.B., and C.T. under Minn. Stat. § 609.344, subd. 1(o) (2010) (third-degree "nonconsensual sexual penetration") and Minn. Stat. § 609.345, subd. 1(o) (2010) (fourth-degree "nonconsensual sexual contact").

The case was tried to a jury. At trial, S.K. testified that during a massage, appellant inserted his finger into her anus and brushed two of his fingers on her vagina without her permission. P.G. testified that appellant rubbed the top half of her buttocks and the "whole area of [her] breast," including her nipples, without her permission. A.B. testified that appellant massaged her "buttocks area" and touched her breasts without her permission. C.T. testified that appellant massaged the "top of [her] buttocks area" and her breasts without her permission.

Appellant testified that he massaged S.K. on three separate occasions and that he gave her a full buttocks massage on each occasion at her request. Appellant further testified that on S.K.'s third visit, he perceived that S.K. "want[ed] sex" and consented before he "put [his] fingers in her." Appellant testified that P.G. needed work on her "pecs area" and that he massaged her chest, including her breasts, after P.G. consented to a massage of the entire area from her neck to her stomach. Appellant testified that he massaged A.B.'s pectoral muscles and touched a pressure point on her inner thigh, but that he did not touch her breasts. Appellant testified that he massaged C.T.'s lower back because she marked that area on an intake form and that he gave her a "chest" massage after she verbally consented.

During cross-examination by the prosecutor, appellant admitted that (1) his massage of S.K. was "sexual," (2) his standard written client contract states that massages are not sexual, (3) his malpractice-insurance code of ethics does not allow sexual touching of clients, (4) he was trained to "have women properly draped" when he massages areas "around an intimate part," and (5) he lied to the police about whether he engaged in sexual contact and penetration with S.K.[1] The prosecutor asked appellant, "And your testimony today is that those four women lied?" Appellant responded, "It's clear to me." Later, the prosecutor asked, "But you want this jury to believe that even though you've lied to the police, violated your code of ethics, violated your malpractice insurance, that the other three women, [P.G.], [C.T.], and [A.B.] are liars, right?"

---

[1] On redirect, appellant clarified that the police did not directly ask him about S.K.

Appellant responded, "From what they said, yes." Appellant did not object to the prosecutor's questions.

The jury found appellant guilty of fourth-degree criminal sexual conduct against S.K. and P.G. and not guilty of the other charges. The district court stayed imposition of sentence and placed appellant on probation for ten years. Appellant filed an appeal with this court and requested a stay to pursue postconviction relief in district court. This court stayed the appeal and remanded for postconviction proceedings.

Appellant petitioned for postconviction relief, requesting a new trial on the ground that his trial counsel was ineffective because he failed to present expert testimony "as to the proper limits of a therapeutic massage." Appellant argued the expert testimony "that breast and full-buttocks massage may be performed upon request of a client would have cast the victims' testimony in a more accurate light" and rebutted the state's theory that "consented-to breast and buttocks massage was unheard-of." As support for his petition, appellant offered an affidavit from his wife, which included e-mails to his trial attorney listing several massage therapists who were experts in breast massage. Appellant did not provide an affidavit from his trial attorney. The postconviction court denied appellant's request for postconviction relief without an evidentiary hearing. This court dissolved the stay and reinstated the appeal.

## D E C I S I O N

## I.

Appellant challenges the postconviction court's summary denial of his petition for relief. We review a summary denial of a petition for postconviction relief for an abuse of

4

discretion. *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012). "A postconviction court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Id.* (quotation omitted).

A postconviction court must hold a hearing on a petition "[u]nless the petition and the files and records of the proceeding conclusively show that the petitioner is entitled to no relief." Minn. Stat. § 590.04, subd. 1 (2014). "Any doubts about whether to conduct an evidentiary hearing should be resolved in favor of the defendant seeking relief." *State v. Nicks*, 831 N.W.2d 493, 504 (Minn. 2013). A reviewing court "must consider [the petitioner's] allegations in the light most favorable to him, and also consider the files and records of the proceeding, including the State's arguments." *Id.* at 505-06 (quotation omitted). But "[a]n evidentiary hearing is unnecessary if the petitioner fails to allege facts that are sufficient to entitle him or her to the relief requested." *Davis v. State*, 784 N.W.2d 387, 392 (Minn. 2010). And an evidentiary hearing is not warranted when a petitioner's allegations are presented solely as "argumentative assertions without factual support." *Id.* (quotation omitted). In sum, "[i]f the postconviction court concludes there are no material facts in dispute that preclude dismissal, and the State is entitled to dismissal of the petition as a matter of law, the court is not required to hold an evidentiary hearing." *Nicks*, 831 N.W.2d at 506 (quotation omitted).

To receive an evidentiary hearing on a postconviction claim of ineffective assistance of counsel, a petitioner must allege facts that, if proved by a fair preponderance of the evidence, would satisfy the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). *Bobo v. State*, 820 N.W.2d 511, 516 (Minn.

5

2012). Under the first prong of that test, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88, 104 S. Ct. at 2064. "The petitioner must overcome the presumption that counsel's performance fell within a wide range of reasonable representation." *Wright v. State*, 765 N.W.2d 85, 91 (Minn. 2009) (quotation omitted). Under the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. An appellate court "need not address both the performance and prejudice prongs if one is determinative." *State v. Rhodes*, 657 N.W.2d 823, 842 (Minn. 2003).

Appellant asserts that his trial attorney was ineffective because the attorney failed to present expert testimony regarding therapeutic massage. Appellant argues that the state presented a "unique" case theory, which "posit[ed] that even the consented-to breast and buttocks massages that [appellant] admitted to would be (1) unethical, (2) in violation of malpractice insurance policies, (3) in violation of the treatment contract, and (4) unheard-of." Appellant further argues that "[d]efense expert testimony that breast and full-buttocks massage may be performed upon request of a client" would have "clarified the therapist-client relationship with respect to *consented-to* touching of intimate areas performed for therapeutic purposes" and would have "cast the victims' testimony in a more accurate light." Appellant concludes that without expert testimony, "the

6

prosecution was allowed to present an unrebutted theory that consented-to breast and buttocks massage was unheard-of" and "so far outside professional boundaries that a client would never consent to it and, if they did, a therapist would be barred from performing it."

Appellant's arguments appear to raise an issue of trial strategy. Appellate courts "give trial counsel wide latitude to determine the best strategy for the client." *Nicks*, 831 N.W.2d at 506. Generally, the extent of any investigation—including interviewing prospective witnesses and calling prospective witnesses at trial—is part of trial strategy and "should not be readily second-guessed." *Id.* Minnesota caselaw includes many examples of cases holding that an attorney's decisions regarding which witnesses to interview or call is unreviewable trial strategy. *See, e.g.*, *State v. Davis*, 820 N.W.2d 525, 539 n.10 (Minn. 2012) (stating that "decisions about which witnesses to interview are typically matters of trial strategy that we will not review"); *State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986) (stating that decisions about "[w]hich witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel"). Thus, the postconviction court here reasoned, in part, that the decision whether to call an expert witness was unreviewable trial strategy. The postconviction court noted that "[w]hile there may be some instance in which the failure to present an expert witness is, arguably, reviewable and may deprive a defendant of a fair trial, this simply is not the case here."

As the postconviction court recognized, in some circumstances, trial counsel's failure to call a witness is reviewable for ineffective assistance of counsel. For example,

7

in *Nicks*, trial counsel subpoenaed cellphone records to support his defense theory that certain alleged threatening phone calls did not occur. 831 N.W.2d at 506-07. But trial counsel did not obtain the cellphone records because he did not read or understand the cellphone service provider's response to his subpoena. *Id*. at 507. Even without the records, trial counsel presented a theory at trial that the phone calls never occurred. *Id*. The supreme court concluded that counsel's conduct was not unreviewable trial strategy. *Id*. The supreme court reasoned:

> Obtaining [the] cellphone records was not a course of action that trial counsel considered and rejected; rather, it remained a central part of counsel's theory of the case and his strategy at trial. Unlike the cases where trial counsel has considered possible strategies and rejected them, it appears that the cellphone-record evidence was not obtained because trial counsel did not follow up on information received and did not perform the necessary steps to successfully execute on his main theory of the case.

*Id*. The supreme court explained that the case was "analogous to a trial counsel stating that he *wanted* to call a certain witness, issued a *subpoena* to get that witness to trial, implemented a strategy at trial that *relied* on that witness testifying, and then, after that witness failed to appear, inexplicably took no further action." *Id.*

Appellant contends his attorney's failure to call an expert witness is reviewable for ineffective assistance of counsel and that his postconviction submissions were sufficient to obtain an evidentiary hearing on that issue. He argues that "it is clear from the petition and exhibits what [the evidentiary hearing] testimony would have concerned" and that wife's e-mails to defense counsel "surely constituted a suggestion that he consult with one of the experts she listed." But even if we view appellant's allegations in the light

8

most favorable to him and construe the e-mails to mean that appellant encouraged his defense counsel to call an expert witness at trial, appellant does not allege facts showing that counsel's failure to do so was the result of anything other than an unreviewable strategic decision. Unlike the circumstances in *Nicks*, the facts alleged here do not suggest that defense counsel decided to call an expert witness but failed to execute that decision.

And although "[c]riminal cases will arise where the only reasonable and available defense strategy requires consultation with experts or introduction of expert evidence," *Harrington v. Richter*, 562 U.S. 86, 106, 131 S. Ct. 770, 788 (2011), it is not obvious that this case falls into that category. Appellant's proffered testimony regarding massage therapy does not necessarily fit within the category of "scientific, technical, or other specialized knowledge" that defines admissible expert testimony. *See* Minn. R. Evid. 702. Moreover, defense counsel presented a consent defense at trial, arguing that S.K., P.G., and C.T. consented to the sexual penetration or contact. *See* Minn. Stat. §§ 609.344, subd. 1(o) (providing that third-degree criminal sexual conduct requires "nonconsensual sexual penetration"), .345, subd. 1(o) (providing that fourth-degree criminal sexual conduct requires "nonconsensual sexual contact"). As to A.B., trial counsel argued that appellant simply did not engage in sexual contact. Given the defense strategy at trial, it is not apparent that expert testimony regarding massage therapy was relevant or necessary. Appellant contends that an expert could have testified that *if* a woman consented, then the alleged sexual contact would be within the bounds of

9

acceptable practice.[2] That proffer does not persuade us that the only reasonable and available defense strategy in this case required expert testimony.

Appellant's arguments regarding the need for expert testimony really focus on the prosecutor's inquiries and arguments at trial, and not on an obvious need for expert testimony. Appellant argues that "to meet the state's aggressive theory of this case," which he calls "unique," "the defense badly needed expert testimony on massage therapy practices." Essentially, appellant relies on the prosecutor's particular approach at trial to show that his attorney was ineffective. That reliance is unavailing because "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Thus, the proper analysis here must focus on what defense counsel knew *before* trial, when a decision whether to retain an expert would have been made, and not on what defense counsel learned *during* trial. Appellant does not allege any facts showing that it was objectively unreasonable for his defense attorney to fail to anticipate the prosecutor's "unique" strategy. *Cf. State v. Rhodes*, 627 N.W.2d 74, 88 (Minn. 2001) (concluding that an "evidentiary hearing [was] necessary to determine whether the level of trial counsel's advocacy was unreasonable" based in part

---

[2] At oral argument to this court, appellant's counsel acknowledged that appellant's alleged penetration of S.K. "would have been beyond any kind of permissible massage therapy practice" and therefore "completely outside of any expert testimony."

on affidavits submitted by "two expert defense lawyers," which addressed the effectiveness of trial counsel's representation).

In sum, appellant's postconviction submissions regarding defense counsel's failure to call an expert witness do not allege facts showing that the failure was the result of anything other than an unreviewable strategic decision. Nor do his submissions overcome the "strong presumption" that counsel's performance fell "within the wide range of reasonable professional assistance." *State v. Cram*, 718 N.W.2d 898, 910 (Minn. 2006) (quotation omitted).

Appellant also asserts, in an argument heading, that his trial counsel was ineffective for "fail[ing] to object to prosecution evidence." But appellant did not raise that issue in his petition for postconviction relief, and he does not present legal argument to support his assertion. We therefore limit our review to issues that were raised and determined in the postconviction proceeding. *See Schleicher v. State*, 718 N.W.2d 440, 445 (Minn. 2006) ("It is well settled that a party may not raise issues for the first time on appeal from denial of postconviction relief." (quotations omitted)); *State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) ("An assignment of error in a brief based on mere assertion and not supported by argument or authority is waived unless prejudicial error is obvious on mere inspection." (quotation omitted)), *aff'd*, 728 N.W.2d 243 (Minn. 2007).

In conclusion, because appellant did not show that there were material facts in dispute precluding dismissal, the postconviction court did not abuse its discretion by summarily dismissing appellant's petition for relief.

## II.

Appellant claims that he is entitled to a new trial because the prosecutor engaged in prejudicial misconduct. Specifically, he argues that the prosecutor asked improper "were they lying" questions during cross-examination and impermissibly vouched for the credibility of the victims in his closing argument. Appellant did not object to the alleged misconduct at trial.

A defendant who fails to object to alleged prosecutorial misconduct ordinarily forfeits the right to appellate review of the purported misconduct. *State v. Ture*, 353 N.W.2d 502, 516 (Minn. 1984). This court has discretion to review unobjected-to prosecutorial misconduct if plain error is shown. Minn. R. Crim. P. 31.02; *State v. Ramey*, 721 N.W.2d 294, 299 (Minn. 2006). To establish plain error based on a claim of prosecutorial misconduct, the prosecutor's unobjected-to act must constitute error, the error must be plain, and the error must affect the defendant's substantial rights. *Ramey*, 721 N.W.2d at 302. The burden rests with the defendant to demonstrate error that is plain. *Id*. If the defendant satisfies his burden, the burden shifts to the state to demonstrate that the error did not affect the defendant's substantial rights. *Id*. "The third prong, requiring that the error affect substantial rights, is satisfied if the error was prejudicial and affected the outcome of the case." *State v. Griller*, 583 N.W.2d 736, 741 (Minn. 1998). "If these three prongs are satisfied, [this] court then assesses whether the error should be addressed to ensure fairness and the integrity of the judicial proceedings." *Ramey*, 721 N.W.2d at 302.

*"Were They Lying" Questions*

"Generally, questions designed to elicit testimony from one witness about the credibility of another have no probative value and are considered improper and argumentative." *State v. Simion*, 745 N.W.2d 830, 843 (Minn. 2008). "But the prosecutor may ask these questions when the defendant holds the issue of the credibility of the state's witnesses in central focus." *Id*. (quotations omitted).

Appellant argues that he did not hold the issue of the credibility of the state's witnesses in central focus, but merely "pointed out how that testimony was inconsistent with (a) what was marked on the client intake forms and (b) the victim's actions after the massage, including leaving a tip." Appellant points out that his closing argument referred to "a difference in *perception* between victim and alleged perpetrator" and did not "engage in a credibility contest." Appellant relies on *State v. Morton*, which concluded that the defendant did not put the witnesses' credibility at issue because he merely "contradicted their testimony" and "did not state or insinuate that they were deliberately falsifying any of it." 701 N.W.2d 225, 235 (Minn. 2005). Appellant also relies on *State v. Leutschaft*, in which this court stated that "[t]he 'central focus' test appears to apply when the defense *expressly* accuses opposing witnesses of falsehoods or fabrications." 759 N.W.2d 414, 422 (Minn. App. 2009), *review denied* (Minn. Mar. 17, 2009).

The state argues that appellant "insinuated that the victims were fabricating testimony" during his opening statement when his trial counsel stated, "And more importantly you will hear that none of the women gave any indication that they misunderstood what was happening, or that my client could not continue with his

13

massage." The state points to several statements appellant made during direct examination that appear to insinuate that the state's witnesses were deliberately falsifying testimony, such as "And I have no idea what all they was talking about yesterday" and "I don't know what [C.T.] [was] talking about." The state further argues that "[a]ppellant did not need to expressly accuse the victims of falsehoods or fabrications to fall within the scope of the 'central focus' test." The state relies on *Simion*, in which the supreme court held that the "central focus" test was satisfied merely because the defendant "maintained throughout the trial and during closing argument that [a company's] version of the events was wrong, that [the company] in fact owed him money, and that the testimony of [the company's] general manager and the repairman was incorrect." 745 N.W.2d at 843.

"An error is plain if it was clear or obvious," which is usually shown "if the error contravenes caselaw, a rule, or a standard of conduct." *Ramey*, 721 N.W.2d at 302 (quotation omitted). When "it is reasonably debatable whether . . . 'were they lying' questions were error," the alleged error is not plain. *Leutschaft*, 759 N.W.2d at 423. Here, appellant and the state present opposing but reasonable arguments regarding whether the prosecutor's "were they lying" questions were improper under caselaw. Because it is reasonably debatable whether the questions were improper, appellant has not met his burden to demonstrate that the alleged error is plain.

*Prosecutorial Vouching*

Impermissible vouching occurs "when the government implies a guarantee of a witness's truthfulness, refers to facts outside the record, or expresses a personal opinion

14

as to a witness's credibility." *State v. Lopez-Rios*, 669 N.W.2d 603, 614 (Minn. 2003) (quotations omitted). "But the state may argue that particular witnesses were or were not credible." *Id*.

Appellant argues that the following three statements by the prosecutor during closing argument constitute impermissible vouching: "No other witnesses [except appellant] lied to the police"; "I submit to you that . . . the witness[es]' testimony in this case, they are credible"; and "You didn't get any attitude [from the state's witnesses]. They were—their demeanor, their presence. They were telling the truth." The state argues that the first statement was proper because appellant testified that he lied to the police. As to the other two statements, the state argues that they "constitute arguments about witness credibility based on what occurred at trial" and that "[t]hroughout the 33 pages of his closing and rebuttal arguments, the prosecutor meticulously reviewed each witness's testimony and evaluated what they said as well as their demeanor, body language, and credibility."

A prosecutor has "a right to analyze the evidence and vigorously argue that the state's witnesses were worthy of credibility." *State v. Googins*, 255 N.W.2d 805, 806 (Minn. 1977). When evaluating whether a prosecutor improperly vouched for a witness, a reviewing court must look at the closing argument as a whole. *State v. Swanson*, 707 N.W.2d 645, 656 (Minn. 2006). Appellant acknowledges that "a prosecutor may argue credibility based on relevant factors, such as corroborative evidence and the witnesses' demeanor," but argues that the second two statements amount to "categorical vouching," which "can't be justified simply by recitations to evidence."

15

In *Swanson*, the supreme court held that "the statement '[t]he state believes [Karol House] is very believable' is impermissible vouching *on its face* because the state directly endorsed the credibility of witness House." *Id*. (emphasis added). And in *Ture v. State*, the supreme court held that it was improper for the prosecutor to use "the first-person pronoun 'I' during closing argument" when addressing witness credibility because a prosecutor "may not interject his or her personal opinion so as to personally attach himself or herself to the cause which he or she represents." 681 N.W.2d 9, 20 (Minn. 2004) (quotation and alteration omitted).

Of the three challenged statements, only the second—"I submit to you that . . . the witness[es]' testimony in this case, they are credible"—could clearly contravene case law and constitute plain error. But we need not decide whether the statement satisfies the first two prongs of the plain-error test if the statement did not affect appellant's substantial rights. *See State v. Jackson*, 714 N.W.2d 681, 690 (Minn. 2006) ("If any prong of the [plain-error] test is not met, the claim fails.").

Impermissible vouching is not sufficiently prejudicial to warrant a new trial where the evidence against the defendant is strong and the vouching "constituted only a small part of the prosecutor's closing argument." *Swanson*, 707 N.W.2d at 656. Here, the evidence against appellant was strong: four witnesses testified that appellant engaged in nonconsensual sexual penetration or contact during therapeutic massages. And the allegedly improper personal endorsement occurred once during a closing argument that spans 33 pages of the trial transcript. Moreover, the jury acquitted appellant of three of the five charges, suggesting that it was not improperly swayed by the alleged vouching.

16

For those reasons, we conclude that the alleged error did not affect the appellant's substantial rights and that a new trial is not warranted.

Lastly, because appellant has not shown that his trial counsel was ineffective, that the prosecutor's "were they lying" questions constitute error that was plain, or that he was prejudiced by the alleged improper vouching, we reject his assertion that his conviction should be reversed based on cumulative error. *See State v. Yang*, 774 N.W.2d 539, 560 (Minn. 2009) ("An appellant is entitled to a new trial if the errors, when taken cumulatively, had the effect of denying appellant a fair trial." (quotation omitted)).

**Affirmed.**